460 A.2d 732

COMMONWEALTH of Pennsylvania

v.

Tyrone DURRANT, Appellant.

Supreme Court of Pennsylvania.

Argued April 27, 1983.

Decided May 27, 1983.

David M. McGlaughlin, Norristown (court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Alan Sacks, Philadelphia, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Tyrone Durrant, brings this direct appeal from judgments of sentence imposed after a non-jury trial, of two to twenty years on conviction for murder of the third degree and one to five years on conviction for possession of an instrument of crime, the sentences to run consecutively. The charges arose out of the March 3, 1978 beating death of James Oliver, in a pool room in Philadelphia. The appeal on the conviction for possession of instruments of crime was taken to Superior Court and certified to this Court for disposition.

First, it is to be noted appellant raises all of his claims in the context of a challenge to prior appellate counsel's effectiveness. First appellate counsel filed an *Anders* style brief and petitioned to withdraw. See *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We granted his petition and new appellate counsel was appointed to represent appellant on this same direct appeal. This is appellant's first appeal, and present counsel provides appellant's first representation on appeal. Layered claims of ineffectiveness are required only where intervening counsel's stewardship has effected a waiver of some underlying

claim. Technically, no challenge to prior appellate counsel's representation need be raised as prior counsel's action effected no waiver. We have ignored the challenge to the quality of the advocacy of prior appellate counsel and simply addressed the underlying claims.

Appellant challenges the sufficiency of the evidence. Reviewing the evidence on which the finder of fact could have based its verdict, in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, the evidence shows: Prior to the altercation resulting in Oliver's death, Oliver and appellant had been involved in another fight, as witness Stephan English testified appellant had told him, "[Oliver] might have won the fight but I am going to get him back." On the evening of the assault, Oliver had accompanied his cousin to a store which was situated about one-half block from the pool room where the assault took place. Oliver left the store, saying he was going home, but returned shortly thereafter appearing to be in some pain. Instead of going home when he left the store, Oliver had walked to the pool room. As soon as he entered, appellant began swinging at Oliver with a cue stick. An eyewitness testified appellant hit Oliver three or four times with the stick, until the stick broke. Then appellant obtained another cue stick and hit Oliver three or four more times with the second stick. Appellant's statement to the police contained the following account:

I grabbed the first thing near to me. It was a pool stick that I had in my hand. That's when I hit him. I was swinging at his shoulder to try to hit the arm that he had [in a prior altercation] tried to stab me with. He went down, but he got up again. Then I really panicked. I was ready to leave after I hit him the first time, but it scared the hell out of me when he got up. He was standing right in front of me, and he said, 'Is that you, Tyrone?' and I saw he was defenseless, and I felt sorry for him.

.    .    .    .    .

I hit James somewhere near his neck. I am not quite sure exactly where.

. . . . .

I just know I hit him and [the cue stick] broke. I don't know how many times. I hit him with another one also and that one broke too. I had grabbed the stick by the skinny part.

After the beating, Oliver rejoined his cousin at the store, and she escorted him home. Oliver was taken to the hospital that evening; he died, in the hospital early in the morning of March 6th. The medical examiner testified Oliver had suffered "moderate swelling with some fluctuation or motion involving the scalp over the left back portion of the head." Internal damage to Oliver included bruises of the scalp, primarily on the left side, bruises of the brain, and an accumulation of blood in the subarachnoid area. The cause of death was multiple injuries to the head, which injuries were consistent with blows or blunt impacts to the back of the head.

Appellant argues that because the only eyewitness to the beating testified appellant hit Oliver in the ribs and back the evidence was insufficient to prove appellant inflicted the fatal head injuries. This assertion is without merit. Appellant's own statement was that he hit Oliver "somewhere near his neck," and this admission is consistent with infliction of the head injuries suffered by Oliver. Additionally, the medical examiner did not describe any injuries to the torso that would have been made by as severe a beating as appellant inflicted upon Oliver. In reviewing the sufficiency of the evidence, we consider all the evidence and *all reasonable inferences therefrom* which support the verdict. *Commonwealth v. Coccioletti,* 493 Pa. 103, 107, 425 A.2d 387, 389 (1981). In view of appellant's own admission, the trial court could properly have inferred the blows landed on Oliver's head, only inches away from his neck. Moreover, the court, as trier of fact, was free to discredit the eyewit-

ness's testimony of blows only to the torso, particularly in light of the medical testimony.

■ Appellant also argues trial counsel was ineffective for failing to prepare and present evidence of appellant's reasonable fear for his life and of Oliver's violent propensities; for failing to request a continuance to secure the presence of a defense witness; for failing the challenge the legality of the arrest and the admissibility of appellant's statement; for failing to request a jury trial; and for failing to object to the suppression court's presiding over the trial of the case. We have examined each of these claims and hold them to be without merit. The judgment of sentence for murder of the third degree is affirmed.

■ Finally, appellant contends that his conviction for possession of an instrument of crime (18 Pa.C.S.A. § 907(a)) was erroneous, for the reason that pool cues employed in the fatal beating did not meet the statutory definition of instruments of crime. An "instrument of crime" is defined in 18 Pa.C.S.A. § 907(c) to include: "(1) Anything specially made or specially adapted for criminal use; or (2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." The plain meaning of this provision is dispositive of the issue. *Commonwealth v. Stanley,* 498 Pa. 326, 335, 446 A.2d 583, 587 (1982). Clearly, pool cues are not "specially made or specially adapted" for criminal use; nor are they "commonly used" for criminal purposes. Further, we do not regard the fact that two pool cues were utilized, consecutively, in the beating, and the fact that the first cue was used criminally, as basis to view differently the basic nature of the second cue, so as to deem it "commonly used" or "specially adapted" for criminal purposes. As to the conviction for possession of an instrument of crime, therefore, we reverse.

Affirmed in part and reversed in part.