472 A.2d 630

**COMMONWEALTH of Pennsylvania**

**v.**

**David Lee McCLAIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 12, 1983.

Filed Feb. 3, 1984.

Petition for Allowance of Appeal Denied May 8, 1984.

30

Joann Selleck, Assistant Public Defender, West Chester, for appellant.

James R. Freeman, District Attorney, West Chester, for Commonwealth, appellee.

Before SPAETH, President Judge, and POPOVICH, and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in (1) denying appellant's motion to dismiss under Pa.R.Crim.P. 1100; (2) refusing to grant appellant's motion for a mistrial; and (3) admitting into evidence photographs of the victim. Finding all of appellant's claims without merit, we affirm the judgment of sentence.

On December 3, 1980, following a jury trial, appellant was found guilty of criminal attempt—rape, robbery, aggravated assault, burglary, simple assault, and indecent assault. Appellant's timely motions for a new trial and in arrest of judgment were denied. On May 11, 1982, appellant received an aggregate sentence of ten-to-twenty-five years imprisonment on all charges. Pursuant to the timely filing of a motion for reconsideration of sentence, the sen-

tencing court vacated appellant's sentence and ordered a neurologic and psychiatric evaluation of appellant. On December 22, 1982, the original sentence of ten-to-twenty-five years imprisonment was reimposed. This appeal followed.

Appellant alleges first that the lower court erred in denying his petition for a rule 1100 discharge. Specifically, appellant contends that the trial court erred in computing the 180-day period from the filing of the second complaint, rather than from the filing of the first. It is well settled that the 180-day period shall start running from the filing of the second complaint only if the following two-pronged test is satisfied: (1) the first complaint was properly dismissed; and (2) the record does not reflect an attempt by the prosecution to circumvent the requirements of Pa.R. Crim.P. 1100, *Commonwealth v. Ardolino,* 304 Pa.Superior Ct. 268, 450 A.2d 674 (1982); *Commonwealth v. Sires,* 284 Pa.Superior Ct. 50, 424 A.2d 1386 (1981); *Commonwealth v. Navarro,* 276 Pa.Superior Ct. 153, 419 A.2d 141 (1980), *aff'd* 499 Pa. 279, 453 A.2d 308, 309 (1982); *Commonwealth v. Brocklehurst,* 266 Pa.Superior Ct. 335, 404 A.2d 1317 (1979), *aff'd* 491 Pa. 151, 420 A.2d 385 (1980); *Commonwealth v. Brennan,* 264 Pa.Superior Ct. 206, 399 A.2d 739 (1979); *Commonwealth v. Mumich,* 239 Pa.Superior Ct. 209, 361 A.2d 359 (1976). While the second prong of the above test is clear,[1] our Court, with regard to the first prong, has interpreted " '[p]roper dismissal' ... to mean that proceedings on the charges contained in the complaint were dismissed by a competent magisterial or judicial authority who committed no error of law in doing so. This would include, we think, dismissal for failure to make out a prima facie case." *Commonwealth v. Ardolino, supra* 304 Pa.Superior Ct. at 276, 450 A.2d at 679, *quoting Commonwealth v. Brennan, supra* 264 Pa.Superior Ct. at 210, 399 A.2d at 741 (citations omitted). So viewed, the facts are as

1. Insofar as rule 1100 is concerned, the Pennsylvania Supreme Court has noted "that Rule 1100 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." *Commonwealth v. Brocklehurst,* 491 Pa. 151, 153–154, 420 A.2d 385, 387 (1980).

follows: In the late afternoon of July 3, 1979, the victim, a 68-year-old woman, was sexually assaulted, beaten, and robbed in the first floor vestibule of her apartment building. The attack was interrupted by the shouts of a second-floor neighbor, Thomas Eggers, who observed the assault and chased away the assailant. Officer Earl Galloway of the Oxford Borough Police Department was the investigating officer assigned to this case. At the time of his investigation, Officer Galloway had two months of police experience. In addition to interviewing the victim and obtaining a description of her attacker, Galloway spoke with the second-floor neighbor. Mr. Eggers identified the assailant as "McClain," a young man who had attended school with his sister. On July 24, 1979, a photographic line-up was presented to the victim and she identified appellant as the man who attacked her. On August 1, 1979, pursuant to the filing of a criminal complaint, appellant was arrested. A preliminary hearing was twice continued to allow for an in-person line-up. However, at the physical line-up the victim was unable to make an identification. At the preliminary hearing on August 22, 1979, the Commonwealth failed to produce any witnesses. The explanation for this failure was provided by Officer Galloway who stated that both Mr. Eggers and the victim had changed their respective addresses and that he "was having difficulty contacting Mr. Eggers and getting the people together for the hearing and getting information together." (N.T. November 24, 1980 at 52). Nevertheless, as the lower court observed, "[T]he whereabouts of both victim and eye witness [sic] were known to the Commonwealth but, by reason of investigative ineptitude or inertia, no case was presented to the District Justice." (Lower Court Op. at 3–4). Consequently, the District Justice dismissed the complaint and discharged appellant.[2] Nearly a year later, following appellant's arrest

2. It is well established that an accused may be rearrested and prosecuted despite the dismissal of charges at the first preliminary hearing. *Commonwealth v. Weitkamp,* 255 Pa.Superior Ct. 305, 386 A.2d 1014 (1978); *Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975); *Riggins Case,* 435 Pa. 321, 254 A.2d 616 (1969).

on two other charges (unrelated to the instant ones), the original case was reopened. After further investigation, a second criminal complaint was filed on August 13, 1980, and appellant was bound over for trial. Appellant's trial commenced on November 24, 1980—approximately 103 days after the filing of the second complaint and approximately 480 days after the filing of the first.

We find the present situation analogous to the recent Pennsylvania Supreme Court cases of *Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367 (1981) and *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) (plurality opinion). Similar to the instant case, *Genovese* and *Cartagena* each involved a defendant who had been discharged following a preliminary hearing where all charges had been dismissed for lack of a prima facie case. As here, the defendants in *Genovese* and *Cartagena* were subsequently rearrested pursuant to the filing of a second complaint based on the original incident. Finding the dismissal proper and that no evidence existed of "an improper prosecutorial design to circumvent the mandate of Rule 1100," *Commonwealth v. Braithwaite*, 253 Pa.Superior Ct. 447, 450, 385 A.2d 423, 425 (1978), the Court in *Genovese* and *Cartagena* held that the running of the rule 1100 period commenced with the filing of the second complaint. Here, the first complaint was properly dismissed when the Commonwealth failed to present a case at the preliminary hearing on August 22, 1979. Further, the record in the present case does not reflect an attempt by the Commonwealth to circumvent the mandate of rule 1100. While there certainly was a lack of action by the Commonwealth subsequent to the filing of the first complaint, the record clearly shows that this inactivity was not motivated by prosecutorial misconduct. As the lower court correctly noted, "[I]t can be said there was no conduct or motive of any kind." (Lower Court Op. at 5). Thus, we find that the 180-day period

under rule 1100 ran from the filing of the second complaint, and accordingly, we reject appellant's first contention.[3]

 Appellant avers next that the lower court erred in denying his motion for a mistrial on the ground that the victim's testimony, in which she twice referred to her assailant as "David McClain," prejudiced appellant. Furthermore, appellant points out that during the pre-trial suppression hearing the Commonwealth and defense stipulated that the victim would not be asked to identify appellant in the courtroom. Where the Commonwealth promises not to use certain evidence at trial and then later attempts to introduce same, it is reversible error. *Commonwealth v. Levene,* 492 Pa. 287, 424 A.2d 865 (1980); *Commonwealth v. Heacock,* 467 Pa. 214, 355 A.2d 828 (1976). However,

> [e]very unwise or irrelevant remark made in the course of a trial by a judge, a *witness,* or counsel does not compel the granting of a new trial. [The remark must be] of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.

*Commonwealth v. Whitman,* 252 Pa.Superior Ct. 66, 77, 380 A.2d 1284, 1289 (1977), *quoting Commonwealth v. Phillips,* 183 Pa.Superior Ct. 377, 382, 132 A.2d 733, 736 (1957) (emphasis added). While testifying on direct examination, the victim twice used appellant's name when describing the chronology of events during the attack. The first reference occurred after the prosecutor asked the victim, "And then what happened?" (N.T. November 25, 1980 at 197). The victim responded by stating, *inter alia,* "And at the time David McClain jumped up, grabbed the pocketbook and ran. (N.T. November 25, 1980 at 197). The second

3. Appellant's reliance on *Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976) is misplaced. The rationale of *Whitaker* has been limited to those cases "where there is an obvious attempt to evade the requirements of Rule 1100(c) through the use of the nolle prosecui procedure." *Commonwealth v. Genovese, supra* 493 Pa. at 71, 425 A.2d at 370, *quoting Commonwealth v. Johnson,* 487 Pa. 197, 204, 409 A.2d 308, 311 (1979).

reference followed the question, "What happened then?" (N.T. November 25, 1980 at 201). Again the victim answered, "David McClain, he jumped off of me and grabbed my pocketbook and ran." (N.T. November 25, 1980 at 201). After the first mention of appellant's name by the victim, defense counsel objected, and, at a sidebar conference, moved for a mistrial. The lower court denied this motion for the reason that the victim "had not made an in court identification." (N.T. November 25, 1980 at 200). Rather, the court held that the victim had merely "used a name." (N.T. November 25, 1980 at 200). In addition, the court allowed the district attorney to clarify the victim's references in the following manner:

Q: Now, ... listen to my questions very carefully, if you would.

You agree that you had never seen the person who attacked you before that day, don't you? You never had seen him before that day?

A: That's right.

Q: And that day you did not know what his name was at all?

A: That's right.

(N.T. November 25, 1980 at 200–201). When the victim used appellant's name for the second time, the prosecutor immediately asked, "I want to make sure that you had no idea who the person was that attacked you." The victim responded, "That's right." (N.T. November 25, 1980 at 200). Furthermore, pursuant to defense counsel's request, appellant's name was stricken from the victim's testimony and the following cautionary instruction was issued:

THE COURT: Ladies and Gentlemen, we instruct you, as it is a matter of law, that you will disregard [the victim's] testimony, specifically twice as I recall it, in which she used the name David McClain. We grant that motion of the defense, which is properly made, because as you are aware, having heard that testimony,

she did not identify the man who is in this Court as the defendant as her attacker. So you will disregard that. And I am striking from your consideration use of the name David McClain.

(N.T. November 25, 1980 at 229–230). Unlike *Commonwealth v. Levene, supra,* and *Commonwealth v. Heacock, supra,* the Commonwealth in the instant case did not contravene the terms of the pre-trial stipulation. No in-court identification by the victim was ever made and the victim's references to "David McClain" were neither elicited by nor responsive to the prosecutor's questions. Moreover, we find that the Commonwealth's clarification of the victim's testimony coupled with the prompt and thorough cautionary instruction given by the court, removed any possible prejudicial effect. Accordingly, we hold appellant's second claim meritless.

 Appellant complains finally that it was error for the trial court to admit into evidence two photographs of the victim's beaten face. In Pennsylvania, the law is clear that the "admission of photographs in a criminal case is largely within the sound discretion of the trial court, and its rulings will not be overruled on appeal unless there is an abuse of that discretion." *Commonwealth v. Brown,* 273 Pa.Superior Ct. 22, 24, 416 A.2d 1069, 1070 (1979); *see also Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978); *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977); *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974). Here, the Commonwealth sought the admission into evidence of two color photographs of the victim's face which were taken while the victim was hospitalized shortly after the attack. The lower court found that the photographs (1) were "necessary for the Commonwealth to prove an attempt to cause serious bodily injury or the occurrence of serious bodily injury under circumstances manifesting an extreme indifference to the value of human life"; and (2) would "better convey to the Jury the injuries received than the clinical comments of an Emergency Room

doctor." (Lower Court Op. at 9). We find this issue to be controlled by the Pennsylvania Supreme Court's recent decision in *Commonwealth v. McCutchen,* 499 Pa. 597, 454 A.2d 547 (1982). In that case, the Supreme Court ruled that photographic slides showing the injuries and bruises suffered by the six-year-old victim, including tears in the anal area, were admissible. While in *McCutchen* the prosecution was for first-degree murder, the court held the slides admissible because their purpose was to establish sodomy as a motive for the killing, and to show the brutality of the beating, thereby permitting the inference of the defendant's intent to kill. Accordingly, we cannot say that, in the present case, the trial court abused its discretion in allowing the photographs to be introduced, *inter alia,* for the purpose of proving the essential elements of the aggravated assault charge. For the foregoing reasons, we hold appellant's claims meritless, and thus affirm the judgment sentence.[4]

Affirmed.

SPAETH, President Judge, concurs in the result.

**4.** Appellant also argues that the lower court erred in allowing the Commonwealth to use evidence of his prior convictions for impeachment purposes. However, this claim has been waived because appellant's own trial counsel presented evidence of appellant's prior criminal record as a matter of deliberate trial strategy. *See Commonwealth v. Segers,* 460 Pa. 149, 158 n. 3, 331 A.2d 462, 467 n. 3 (1975). On direct examination, appellant was questioned and testified as follows:

Q: David, were you ever convicted of a crime?
A: Yes.
Q: What crime was that?
A: Theft and Receiving Stolen Property.
Q: And do you remember when?
A: '78.
Q: Did you plead guilty to those crimes?
A: Yes.

(N.T. December 1, 1980 at 414). Accordingly, we hold that this issue has not been properly preserved.