484 A.2d 365

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Calvin FLOYD, Appellant.**

Supreme Court of Pennsylvania.

Argued May 14, 1984.

Decided Nov. 20, 1984.

Janis Smarro, Philadelphia, (Court-appointed), for appellant.

Robert B. Lawler, Asst. Dist. Atty., Chief, Appeals Div., Allan Sacks, Philadelphia, Marion E. MacIntyre, Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Calvin Floyd appeals a Philadelphia County Common Pleas Court Order denying his post-verdict motions for a new trial and in arrest of judgment, which followed his conviction by jury of murder of the first degree and the jury's imposition of a sentence of death. For the reasons that follow, we affirm the denial of a new trial, but modify the sentence to life imprisonment.

## I.

■ We initially address Floyd's argument that he is entitled to a new trial because the trial court erred by allowing the prosecution to introduce evidence of other crimes he had committed for the purpose of impeaching his testimony. This argument lacks merit. The decision as to whether to admit such evidence is within the sound discretion of the trial judge, *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978), and we perceive no such abuse of discretion here.

When the prosecutor cross-examined Floyd, the following exchange occurred respecting a prosecution witness's testimony that Floyd had shown her a pistol and stated that he shot the murder victim with it:

Q. All right. Let's get to Charmaine. You never showed that gun to Charmaine, of course, right?

A. I never carry a gun. I don't have a gun to show anybody.

Q. You never carried a gun?

A. I never carried a gun. [N.T. 2/19/81, pp. 71–72].

Thus, of his own accord, Floyd went beyond simply denying having shown a gun to the prosecution witness, and made the sweeping claim that he had *never* carried a gun, thereby implying that it was not characteristic of him to carry or use guns. The trial judge subsequently permitted the prosecutor to introduce, for the limited purpose of impeaching Floyd's testimony, Floyd's prior weapons offenses—violating the Uniform Firearms Act, carrying concealed weapons, and wantonly pointing a firearm.

Floyd contends that the admission of other crimes evidence was erroneous because Floyd's denial was unfairly construed broadly. We are unable to deduce, however, that the trial judge, who actually heard the testimony transcribed in the cold record before us, erred in his interpretation, and we must, therefore, reject this argument.[1]

1. We must also reject Floyd's argument that even if the Commonwealth had the right to rebut his testimony, that admission of the

## II.

Floyd also contends that he is entitled to a new trial because his attorney failed to provide him with effective assistance, as guaranteed him under the Sixth Amendment to the United States Constitution.[2]

Because the law presumes that counsel was effective, the burden of establishing ineffectiveness rests upon the appellant. *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981). "[B]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy *actually* employed was so unreasonable that no competent lawyer would have chosen it." *Id.*, 494 Pa. at 233, 431 A.2d at 234 (quoting *Commonwealth v. Hill*, 427 Pa. 614, 617, 235 A.2d 347, 349 (1967)).

Floyd argues that his attorney was ineffective because he failed to object to certain prosecutorial remarks which he believes to have been improper and because he failed to press objections to other remarks during post-trial arguments as a basis for a new trial grant. We disagree. Our review of the record reveals that the prosecutor's remarks complained of were prompted by remarks of defense counsel. For example, as Floyd asserts, the prosecutor made the following remark about defense counsel:

> MR. DI DONATO: Judge if I do that it's a mistrial and the jury has to be dismissed. When Mr. Berry puts on a big act ... He's expressing an opinion in front of the jury. [N.T. 2/17/81, p. 47]

The Commonwealth points out, however, as Floyd does not, that the prosecutor's remark was preceded by the following

evidence of conviction for wantonly pointing a firearm was erroneous because it revealed, to his prejudice, a circumstance collateral to his possession of the gun—the wanton pointing of the gun. We do not see, however, how recitation of the simple fact of his conviction of this misdemeanor, allowed only for the purpose of demonstrating gun possession, could unfairly prejudice the jury against Floyd with respect to the issue as to whether he committed the murder in issue.

2. Current counsel's representation of Floyd began after the decision respecting post-trial motions.

sarcasm of defense counsel at the conclusion of his cross-examination of a prosecution witness:

MR. BERRY: I have no more questions of him. He can get out this courtroom and get out the city hall. (Sic) [N.T. 2/17/81, p. 47]

While we do not condone this retort or others by the prosecutor, where, as here, the prosecutor's verbal impropriety "was motivated by, and was commensurate with," that of defense counsel, such retorts do not constitute a basis for reversal of a jury verdict. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 62, 337 A.2d 873, 880 (1975). *Commonwealth v. Gwaltney*, 497 Pa. 505, 513, 442 A.2d 236, 240 (1982). Accordingly, defense counsel's failure in the present case to object to the prosecutorial retorts he himself prompted does not constitute ineffective assistance of counsel, because it is not an "unreasonable strategy," to refrain from making nonmeritorious objections. *See Commonwealth v. Barren*, 501 Pa. 493, 462 A.2d 233 (1983); *Commonwealth v. Rawles*, 501 Pa. 514, 524, 462 A.2d 619, 624 (1983).

Floyd further contends that his counsel ineffectively assisted him because he advised Floyd to testify, which advice Floyd accepted, thereby exposing himself to what proved to be damaging cross-examination. We must reject this contention, because "the decision whether or not to testify on one's own behalf rests solely on the defendant." *Rawles*, 501 Pa. at 523 n. 3, 462 A.2d at 624 n. 3. The record before us admits of no disagreement between Floyd and his counsel as to his testifying.

Floyd next argues that his trial counsel was ineffective because he did not interview or call as a witness Police Officer Daniel Rienckney.[3] Shortly after the murder, in a nearby location, Officer Rienckney took into custody an individual who to some degree fit the description of the murderer provided by eyewitnesses, but this individual was

3. We note that the record does not reveal whether or not trial counsel interviewed Officer Rienckney.

released after investigation. Floyd does not contend that this omission in anyway prejudiced his defense, only that it may have done so. He makes no allegation that an interview of, or testimony by, Officer Rienckney would have in any way added to the evidence presented in his defense. Thus, we must reject this contention, for one

> who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which an appellate court can conclude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract.

*Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981).

Floyd lastly argues that his trial counsel was ineffective because he failed to preserve, in post-trial motions, objections to the admission of what he contends was prejudicial hearsay evidence.

■ The testimony of Detective Checchia that prosecuting eyewitnesses, Edgar Thomas and Walter Pernell, feared reprisal from the defendant was inadmissible hearsay. Similarly inadmissible, on hearsay grounds, was the detective's testimony that Steven Brown, an alleged eyewitness who was not called upon to testify, and Sandy DeLuca, the victim's daughter, viewed a composite sketch composed from eyewitnesses' descriptions and that Brown stated that the sketch resembled the murderer while DeLuca stated that the sketch resembled the defendant. The detective's testimony constituted inadmissible hearsay, but, in view of the overwhelming evidence against the defendant, harmless error was committed. Defendant's conviction was supported, overwhelmingly, by testimony of eyewitnesses to the murder, testimony that prior to committing the murder the defendant declared to various persons his intent to kill the victim, and testimony that a week after the murder the defendant bragged about having committed the crime. See

*Commonwealth v. Mehmeti,* 501 Pa. 589, 596, 462 A.2d 657, 660–661 (1983).

### III.

Floyd further argues that he is entitled to a new trial because of several instances of prosecutorial misconduct during summation.

██ One instance of misconduct as characterized by Floyd occurred when the prosecutor drew attention to the absence of testimony by an individual whose testimony had been ruled inadmissible by the trial judge, implying that the jury should draw an inference adverse to the defendant from the absence of favorable testimony by that person. This statement, however, is not cause for reversal because it was defense counsel, in his summation, who initially drew attention to the absence of that testimony, implying that the jury should draw an inference favorable to the defendant. Because we view the remarks complained of as inspired by defense counsel's own, the conduct complained of is not cause for reversal, *Stoltzfus,* 462 Pa. at 61–62, 337 A.2d at 882; *Gwaltney,* 497 Pa. at 513, 442 A.2d at 240, especially in light of the fact that the trial court carefully instructed the jury to disregard the remarks of both counsel.

Floyd also draws attention to prosecutorial comments on the defendant's credibility. Representative of that commentary is the following reference to Floyd's denial of ever having carried a gun:

MR. DI DONATO: ... But now I can say in this one instance—I can say it—he out and out lied to you about that particular statement.

██ We do not find this to be reversible error, because this was a fair inference from irrefutable evidence, rather than a broad characterization of the whole of the testimony as a "big lie," *see Commonwealth v. Kuebler,* 484 Pa. 358, 399 A.2d 116 (1979), and, therefore, could be no more harmful to defendant's case than would have been the simple juxtaposition of the defendant's denial and the evi-

dence of convictions. *See United States v. Schartner*, 426 F.2d 470 (3rd Cir., 1970) (prosecuting attorney's improper expression of belief that defendant is guilty is not cause for grant of new trial when the remarks, fairly construed, refer only to belief based on evidence and not to opinion formed from extraneous facts).[4]

## IV.

Floyd also contends that the trial court erred in denying his post-trial motion for a new trial which was based upon prosecution witness Charmaine Mills' post-trial recantation of her testimony that Floyd had shown her a gun, stating that he had used it to commit the murder.

"Recantation testimony is considered extremely unreliable. The trial court is to deny a new trial unless satisfied that the recantation is true and an appellate court is not to disturb the decision unless there is clear abuse of that discretion." *Commonwealth v. Nelson*, 484 Pa. 11, 13, 398 A.2d 636, 637 (1979).

We find no abuse of discretion in the case at hand because the trial court found the recantation unreliable on the basis of the determination that there was a significant possibility that the witness was pressured into it, and our review of the record supports this determination. Moreover, the rejection of the recantation is also supported by the other evidence linking Floyd to the murder. *See Nelson*, 484 Pa. at 14, 398 A.2d at 637.

## V.

Floyd alternatively argues that his sentence should be modified to life because of prosecutorial misconduct in closing argument during the sentencing hearing.

---

4. Floyd complains of a number of other prosecutorial comments, but upon review of the record, including that of defense counsel's summation, we find that they do not constitute cause for reversal.

■ The prosecutor argued in closing that the jury should pronounce a sentence of death because of the possibility that Floyd might one day get out of prison if he received a life sentence. The prosecutor initially noted that Floyd might escape from prison to murder again:

> MR. DI DONATO: ... Calvin Floyd's a predator, ladies and gentlemen of the jury. He is a predator. He is (sic) done it before and he will do it again. He's escaped from prison once.
>
> [N.T., 2/23/81, p. 144]

The prosecutor subsequently posed the possibility that Floyd might one day receive parole, and at least implied that Floyd might murder one of the jurors:

> MR. DI DONATO: ... you go to sleep at night not following the law in this case, and if you read ten years from now that the parole board let Calvin Floyd out and he killed somebody like you, Mrs. Brown, or you, Mrs. Smithers, or you, Mr. Carey, you sleep with it.
>
> [N.T., 2/23/81, p. 145]

It is extremely prejudicial for a prosecutor to importune a jury to base a death sentence upon the chance that a defendant might receive parole, *Commonwealth v. Aljoe,* 420 Pa. 198, 216 A.2d 50 (1966), or the possibility of escape from prison, *Brooks v. Francis,* 716 F.2d 780 (11th Cir. 1983), particularly where, as here, the jury was cognizant of the facts that Floyd had previously been convicted of prison breach and, also, that he had attempted to escape from custody the very morning of the sentencing hearing. Consequently, we must reduce the penalty to life imprisonment. *Aljoe.*[5]

NIX, C.J. and LARSEN, J., concurred in the result.

---

**5.** We note that there were other instances of prosecutorial misconduct in closing argument at the sentencing hearing. We decline to address them only because it is unnecessary, and our reticence should in no way be interpreted as condonation.