524 A.2d 942

**COMMONWEALTH of Pennsylvania**

v.

**Grover TAYLOR, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1986.

Filed April 23, 1987.

Michael N. Borish, Philadelphia, for appellant.

JoAnn M. Verrier, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from judgment of sentence imposed for convictions of robbery, aggravated assault and possessing instruments of crime.

On March 17, 1983, the appellant, Grover Taylor, gained admittance to the apartment of Laura Jean Antonowicz, with whom he was acquainted, under the pretext that he would go to the store for her on an errand. As Ms. Antonowicz turned toward her bedroom to get money for appellant, he approached her from the rear and pulled an electrical cord around her neck. The victim passed out and fell to the floor.

Appellant then got on top of the victim, locked her head between his knees, and stabbed and cut her repeatedly with a knife. When the knife broke in the course of his attack, appellant continued his onslaught first with a pair of scissors, and finally with an ice pick. Ms. Antonowicz, who was in and out of consciousness during this attack, suffered serious disfiguring lacerations of the face, neck, chest and wrist, as well as multiple puncture-type wounds to her chest, breasts, abdomen, genital area and thighs. She was taken to the hospital after being found by a friend.

When the victim's boyfriend, Louis Carbo, Jr., went to the apartment later that day, he found the icepick and electrical cord in the bedroom. The victim's jewelry box was missing and a camera which belonged to Carbo had been taken and was later returned to him by the man with whom appellant resided. Additionally, the victim later discovered that the gold chains that she had been wearing at the time of the attack had also been taken.

Appellant, whom the victim identified as her assailant, was arrested five days after the attack in the home of his father where he was found crouching in a pile of clothing in a closet. When he was told that he was under arrest and the charges were being explained, appellant blurted out, "Yeah, I did it, but I'm not the only one that's going to go to jail for it."

After a trial by jury[1] in April of 1984, appellant was convicted of robbery, aggravated assault, and possessing instruments of crime. Post-trial motions were denied, and appellant was sentenced to ten to twenty years on the robbery count, five to ten years on the aggravated assault charge and two and one-half to five years on the charge of possessing instruments of crime. All sentences were to be served consecutively.

Appellant's initial argument is that his inculpatory statement[2] to police after his arrest should have been suppressed on the ground that he was not arraigned within six hours of his arrest. In *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), the Pennsylvania Supreme Court promulgated a rule that when an accused is not arraigned within six hours of arrest, any statements obtained after arrest but before arraignment are generally not admissible at trial. Appellant was arrested in Camden, New Jersey at 11:50 a.m. on March 21, 1983. After clearing his transfer to Philadelphia with Camden authorities, the arresting officers transported him to the South Detective Division in Philadelphia at 5:05 p.m. Sometime thereafter, the Youth Study Center was notified of appellant's arrest, and later informed the officers that appellant should be kept in custody due to his significant prior record. The appellant was ultimately transferred to the Youth Study Center, although the time of this transfer is not clear from the record. The parties agree that appellant was not arraigned within six hours of his arrest although the record is unclear as to the exact time of arraignment.

■ Although appellant was not arraigned within six hours of arrest, the development of the law since *Davenport* was decided demonstrates that this is not the only factor to be considered. In *Commonwealth v. Lewis*, 350 Pa.Superior Ct. 595, 504 A.2d 1310 (1986) this court, *en*

1. Appellant was a minor when these crimes were committed but he was certified to be tried as an adult.

2. "Yeah, I did it, but I'm not the only one that's going to go to jail for it."

*banc,* held that absent police coercion, any "blurt out" by an accused shall be admissible at trial despite a delay of more than six hours between the time of arrest and arraignment where the "blurt out" is unrelated to the illegal detention. Although he was detained for more than six hours before his arraignment, it is undisputed that appellant uttered an inculpatory remark without questioning or provocation soon after his arrest. We therefore find that the illegality of the detention was unrelated to the "blurt out." As in *Lewis,* appellant's remarks were not induced by police inquiry or other official action; rather, the statement was made as a voluntary and spontaneous act of free will. We therefore affirm the denial of the suppression motion.

Appellant's next argument is that the trial court erred in admitting into evidence the victim's bloodied and puncture-marked jeans, because this evidence was inflammatory and prejudicial. A decision as to the admissibility of demonstrative evidence such as this is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Frederick,* 327 Pa.Superior Ct. 199, 475 A.2d 754 (1984).

The trial judge must initially decide whether the evidence possesses inflammatory characteristics. If the court decides the evidence is not objectionable the evidence is admissible subject to the qualification of relevance. If the evidence is deemed inflammatory, then the trial judge must decide whether its probative value outweighs the likelihood that it will inflame the passion of the jurors. *Id.*

We agree with the Commonwealth's assertion that the victim's jeans were admissible as an indication of the brutality of the attack in order to establish the elements of aggravated assault. In *Commonwealth v. McClain,* 325 Pa.Superior Ct. 29, 472 A.2d 630 (1984) a panel of this court found that there was no abuse of discretion in admitting into evidence two color photographs of the victim's face for the purpose of proving the attempt to cause serious bodily injury, an element of aggravated assault. In *Commonwealth v. Dockins,* 324 Pa.Superior Ct. 305, 471 A.2d 851

(1984) this court held that the victim's bloody clothing was admissible to aid in establishing the nature of the crime and the intent of the defendant.

Appellant argues that the victim's testimony and the medical records were adequate to prove the nature and location of the wounds; however, in *Commonwealth v. McClain, supra,* 325 Pa.Superior Ct. at 37, 472 A.2d at 634 this court approved the trial court's reasoning that the allegedly prejudicial evidence would "better convey to the jury the injuries received than the clinical comments of an Emergency Room doctor."

For the foregoing reasons, we conclude that the probative value of the victim's jeans was not outweighed by the possible prejudicial effect of their admission.

■ Appellant's third argument is that there was insufficient evidence to support the robbery conviction. This issue has not been properly preserved for review as it was raised in post-verdict motions in "boilerplate" fashion. In *Commonwealth v. Holmes,* 315 Pa.Superior Ct. 256, 461 A.2d 1268 (1983) this court held that a post-verdict motion must specify in what respect the evidence was insufficient to support the verdict. Appellant's post-verdict motion stated in conclusory terms that the court erred in denying the defense demurrer and the motion for a directed verdict and that the Commonwealth failed to prove the elements of robbery beyond a reasonable doubt. The appellant did not specify why he should have been granted a demurrer or directed verdict, or which elements of the crime were not established. Therefore, in accordance with *Holmes, supra* we find this issue to be waived.[3]

Appellant also contends that the prosecutor's comment during closing arguments regarding appellant's failure to produce a certain witness constituted prosecutorial miscon-

---

**3.** Even if, arguendo, this issue had been properly preserved for appellate review, after having considered all of the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that the facts were more than sufficient to allow the jury to conclude that the appellant was guilty of the robbery beyond a reasonable doubt.

duct warranting a new trial. While comments which cause the jury to draw adverse inferences from the absence of a witness are often improper, *see e.g., Commonwealth v. Brown,* 492 Pa. 320, 424 A.2d 1211 (1981), the record clearly indicates that the prosecutor's statement was made in direct response to the closing comments of appellant's counsel. Appellant's counsel stated;

> Is Jimmy Mr. Lester? Where is Jimmy? Why didn't he come in here and say 'I am Jimmy. My name is James Lester. Grover Taylor lived with me. He gave me the camera. I gave it to Carbo.'

During her closing argument, the prosecutor responded,

> "Where's James Lester? Where is Jimmy? He was living with Grover. The Commonwealth is supposed to put him on?"

This issue was addressed by the Pennsylvania Supreme Court in *Commonwealth v. Floyd,* 506 Pa. 85, 484 A.2d 365 (1984). There the Court held that a prosecutor's remarks during summation which drew attention to the absence of testimony by a certain individual, were not cause for reversal when the remarks were inspired by defense counsel's own statement which initially drew attention to the absence of that testimony, and implied that the jury should draw an inference favorable to the defendant. We find that the *Floyd* case is dispositive of this issue, and therefore, reject appellant's argument.

Appellant's fifth argument is that for sentencing purposes, his conviction of aggravated assault should have been merged with the robbery conviction.[4] Appellant was sentenced to prison terms of ten to twenty years on the robbery[5] conviction and five to ten years on the aggravated

---

4. The record indicates that a motion to modify sentence was not filed. However, a claim of illegal sentence based on the merger of the underlying convictions cannot be waived. *Commonwealth v. Adams,* 350 Pa.Superior Ct. 506, 504 A.2d 1264 (1986).

5. **18 Pa.C.S.A. § 3701. Robbery**
   **(a) Offense defined.—**
   (1) A person is guilty of robbery if, in the course of committing a theft, he:

assault[6] conviction, to be served consecutively. Appellant argues that these sentences should have been merged, thereby reducing the sentences for these crimes from fifteen to thirty years to ten to twenty years.

In *Commonwealth v. Williams*, 344 Pa.Superior Ct. 108, 496 A.2d 31 (1985), an *en banc* panel of this court reconsidered the common law doctrine of merger. The court stated that to determine whether merger should occur, a court must first determine whether the separate statutory offenses arose out of the same criminal act, transaction or episode. When courts decide under the merger doctrine that two crimes "necessarily involve" one another, it does not always mean that all the elements of one crime are included in the other. It means that on the facts of the case the two crimes were so intimately bound up in the same wrongful act that as a practical matter, proof of one crime necessarily proves the other, so that they must be treated as the same offense.[7] *Commonwealth v. Williams, supra,* 344 Pa.Superior Ct. at 125, 496 A.2d at 40.

(i) inflicts serious bodily injury upon another;
(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
(iii) commits or threatens immediately to commit any felony of the first or second degree;
(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or
(v) physically takes or removes property from the person of another by force however slight.
(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

6. **18 Pa.C.S.A. § 2702. Aggravated assault**
   (a) **Offense defined.**—A person is guilty of aggravated assault if he:
   (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
   . . .
   (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon; . . .

7. The traditional test for merger pursuant to the Double Jeopardy Clause of the United States and Pennsylvania Constitutions, is whether all the elements of one crime are also elements of the other. *See United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518

If the criminal conduct arose out of a single criminal act, then the court must determine whether the statutes defining the crimes charged were directed to substantially the same harm or evil. *Commonwealth v. Williams, id.,* 344 Pa.Superior Ct. at 127, 496 A.2d at 42. Therefore, even if the criminal conduct consisted of only a single criminal act, the separate statutory offenses do not merge if the Commonwealth has substantially different interests at stake and each is injured by the defendant's single act. Summarized, the proper rule of merger is that "an individual can be punished only once for a single act which causes only one injury to the Commonwealth." *Commonwealth v. Williams, supra,* 344 Pa.Superior Ct. at 138, 496 A.2d at 47, *quoting Commonwealth v. Schilling,* 288 Pa.Superior Ct. 359, 370, 431 A.2d 1088, 1093 (1981).

The test for merger, as stated above, is a "flexible, fact-based tool for determining how many offenses against the Commonwealth have actually been committed ... [T]he question of merger will often turn on an appraisal of the precise facts of the case." *Commonwealth v. Williams, supra* 344 Pa.Super. at 143, 496 A.2d at 50. The facts underlying the convictions of aggravated assault and robbery have already been set forth.

█ As pointed out in *Williams,* a robbery can be carried out by the infliction of serious injury, but it can also be accomplished by mere threats of force or simple assault. The brutality and heinous nature of the appellant's violent attack goes beyond the degree conceived of by the Legisla-

(1985); *Commonwealth v. Maddox,* 307 Pa.Superior Ct. 524, 453 A.2d 1010 (1982).

The doctrine of sentencing merger is broader and more flexible than the double jeopardy protection against multiple punishments for the "same offense." The doctrine acts to limit the multiplicity of sentences for what is, in practical effect, a single criminal act, even when the elements of the various crimes charged do not reveal that any of those crimes is necessarily included in any other. *Commonwealth v. Williams, supra* 344 Pa.Super. at 124, 496 A.2d at 40.

Appellant does not assert that the separate sentences violate the Double Jeopardy Clause of the United States or Pennsylvania Constitution. Therefore, we consider his argument only in the context of the common law doctrine of sentencing merger.

ture for a completion of the crime of robbery. The merger of aggravated assault and robbery in cases such as the one *sub judice* would act as an open invitation to violent assailants to compound the injuries they inflict and then escape liability for additional crimes under the guise that the crimes were all part of the same criminal act.

> The fact that a defendant has visited one injury upon the person of another does not insulate him from further liability if he chooses to continue his assaultive behavior and in doing so commits additional crimes.

*Commonwealth v. Williams, supra,* 344 Pa.Superior Ct. at 130, 496 A.2d at 43. This court upheld separate sentences for rape, involuntary deviate sexual intercourse, indecent assault, and unlawful restraint based on a single sexual attack in *Commonwealth v. Wojciechowski,* 285 Pa.Superior Ct. 1, 9, 426 A.2d 674, 678 (1981) (allocatur denied) saying; "[i]t is unthinkable that a woman, once having been raped, is in the position where her attacker can then abuse her in any other fashion sexually ... without incurring further sanctions for these separate and distinct crimes".

■ We also consider whether the statutes defining the crimes charged were directed to substantially the same harm or evil.

> In determining how many different "evils" are present in a given criminal act, the sentencing court should devote close attention to the language the Legislature has used and the scheme it has followed in defining offenses in the Crimes Code and other penal statutes. The court must also approach the question with a heavy dose of common sense.

*Commonwealth v. Williams, supra* 344 Pa.Super. at 143, 496 A.2d at 50. In *Commonwealth v. Adams,* 350 Pa.Superior Ct. 506, 504 A.2d 1264 (1986) this court sitting *en banc,* held that under the facts of that case, the crimes of aggravated assault and robbery grew out of the same physical act and merged for sentencing purposes. We agree with the court in *Commonwealth v. Adams, id.,* 350 Pa.Superior Ct. at 516, 504 A.2d at 1270, that the harm against which

the Legislature intended to protect by enacting the aggravated assault statute is part of the same harm against which the robbery statute is intended to protect, i.e. protection against infliction of bodily injury. However, we also recognize that the robbery statute more specifically intends to punish those who threaten violence or resort to violent means in order to accomplish their goal of theft.

In *Adams*, the appellant shot a bartender while attempting to rob a bar; these facts indicate that true to the language of the robbery statute, the appellant inflicted serious bodily injury upon another, while "in the course of committing a theft." *See,* 18 Pa.C.S.A. § 3701(a)(1). In the case *sub judice,* however, the facts show that the assault was not committed in an attempt to rob the victim since once appellant had strangled the victim causing her to lose consciousness, he was free to complete the robbery. He continued a gruesome and prolonged attack separate and distinct from the robbery. This set of facts indicates that the two crimes were two separate criminal acts. As we expressed in *Commonwealth v. Wojciechowski, supra,* it is unthinkable that a robber, after choking his victim into unconsciousness, could then maim her without fear of further punishment.

We also find that the aggravated assault statute and the robbery statute protect different interests of the Commonwealth as evidenced by the fact the Legislature has classified them separately under "Offenses Involving Danger to the Person" (Title 18, Part II, art. B), and "Offenses Against Property" (*id.* art. C). *Commonwealth v. Williams, supra* 344 Pa.Super. at 144, 496 A.2d at 51.

The rule of merger is not to be mechanically applied. After careful scrutiny of the particular facts of the case presently before the court, we decline to subsume a severe assault into a relatively minor robbery. By making the infliction of bodily harm an element of robbery, the Legislature could not have intended to prevent sentencing courts

from directly punishing those who commit vicious and prolonged assaults.[8]

Finally, appellant asserts three claims of ineffectiveness of counsel. When confronted with a claim of ineffectiveness of counsel, we must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. If the underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). Furthermore, an appellant must show that any deficient performance by counsel caused prejudice and affected the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986).

Appellant's first claim is that trial counsel was ineffective in failing to object to the court's jury instructions regarding the charge of possessing instruments of crime. The jury was instructed to determine whether or not the knife, scissors and ice pick alleged to have been instruments of crime were in fact such, in light of the definition of instruments of crime. The court then provided the jury with an accurate definition pursuant to 18 Pa.C.S.A. § 907(c).[9] Appellant argues that the charge was improper since the court

---

8. For other cases in which it was opined that aggravated assault and robbery should not merge for sentencing purposes, *see Commonwealth v. Adams, supra*, 350 Pa.Superior Ct. at 523, 504 A.2d at 1273 (Wieand, J., joined by Cavanaugh, J., concurring; McEwen, J., concurring); *Commonwealth v. Thompson*, 343 Pa.Superior Ct. 468, 495 A.2d 560 (1985); *Commonwealth v. Bryant*, 282 Pa.Superior Ct. 600, 423 A.2d 407 (1980); *Commonwealth v. Hill*, 237 Pa.Superior Ct. 543, 353 A.2d 870 (1975) (allocatur denied).

9. **907. Possessing instruments of crime**
   **(c) Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection:
   **"Instrument of Crime."**
      (1) Anything specially made or specially adapted for criminal use; or
      (2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

should have found as a matter of law that the scissors and ice pick were not instruments of crime. Appellant does not challenge the court's mention of a knife as a possible instrument of crime.

■ The Legislature has established two alternative criteria for determining whether an object is an instrument of crime: the object must either be one which is regularly used by criminals or it must be one which is physically altered in such a fashion as to demonstrate a criminal objective. *Commonwealth v. Rodriquez*, 316 Pa.Superior Ct. 203, 462 A.2d 1310 (1983). A review of the case law leads us to agree that an ice pick and a pair of scissors may not fit within the statutory definition of an instrument of crime. *See e.g., Commonwealth v. Durrant*, 501 Pa. 247, 460 A.2d 732 (1983) (a pool cue does not fit within the statutory definition of an instrument of crime); *Commonwealth v. Rodriquez, supra* (an ordinary razor blade is not an instrument of crime); *Commonwealth v. Aycock*, 323 Pa.Superior Ct. 62, 470 A.2d 130 (1983) (18″ long piece of channel steel is not an instrument of crime).

■ Even if the appellant's underlying claim has merit and counsel should have objected to the jury instruction, we find that the failure to object has not caused provable prejudice nor has it affected the outcome of the trial. Appellant was charged with possessing instruments of crime and the jury was given an accurate instruction setting forth the elements necessary to convict a defendant of that crime. The judge's charge was a fair, accurate and complete statement of the law. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983). Since the appellant does not contest that the knife was an instrument of crime and the record is clear that the knife was used in the commission of the crime, the fact that the court also mentioned the ice pick and scissors caused no prejudice. Therefore, this claim of ineffectiveness must fail.

Appellant alleges a further claim of ineffectiveness in counsel's failure to object to the sentencing judge's application of the deadly weapon enhancement provision to the

aggravated assault conviction. Appellant argues that weapons enhancement was erroneous for two reasons. First, because 204 Pa.Code § 303.4(b) provides that there shall be no deadly weapon enhancement for conviction under 18 Pa.C.S.A. § 2702(a)(4) relating to aggravated assault with a deadly weapon. As appellant was convicted under 18 Pa.C.S.A. § 2702(a)(1) and not § 2702(a)(4), this claim has no merit.

Appellant also argues that the deadly weapon enhancement should be eliminated for aggravated assault pursuant to § 303.4(c) which states, "Where there are sentences for crimes arising from the same transaction, the deadly weapon enhancement shall be applied only to the conviction offense which has the highest offense gravity score." However, subsection (c) of § 303.4 did not become effective until January 2, 1986, and such amendments are only applicable to offenses committed on or after the effective date. *See* § 303.1(d). Since the offenses were committed on March 17, 1983, subsection (c) is inapplicable to the case at bar. Therefore, this contention is also meritless.

Appellant further contends that counsel was ineffective in failing to challenge the sentencing court's error in calculating appellant's prior record score. The appellant's sentences on robbery, aggravated assault and possessing instruments of crime were all imposed consecutively and the sentencing judge arrived at a prior record score of "6" for each of these offenses. Appellant argues that his offenses arose out of the same transaction and that under § 303.6 of the Sentencing Guidelines, the trial court should have used his prior record score only once, for robbery, and calculated the remaining sentences with a prior record score of zero. 204 Pa.Code § 303.6, found at 42 Pa.C.S.A. § 9721 provides:

§ 303.6. **Consecutive sentences.**

(a) When imposing consecutive sentences for convictions arising out of the *same transaction,* the prior record score is computed for the offense with the highest offense gravity score in such transaction. For the remaining offenses in such transaction, the prior record score shall be zero. (emphasis added)

(b) When imposing consecutive sentences for convictions arising out of *separate transactions,* the prior record score shall be computed independently for each conviction. (emphasis added)

▇▇▇ The issue is whether the convictions arose out of the same transaction. It must be stated at the outset that our holding *supra,* that aggravated assault and robbery were separate criminal acts precluding sentencing merger, does not dispose of this issue since separate criminal acts which demand consecutive sentences, can arise out of the same transaction. This is implicit in the language of § 303.6. By way of example, in *Commonwealth v. Terrizzi,* 348 Pa.Superior Ct. 607, 502 A.2d 711 (1985) appellant was convicted of rape and burglary, crimes which did not merge for sentencing purposes. However, the court stated, "It appears that the proper prior record score for burglary should have been zero because the court imposed consecutive sentences involving the same transaction. 204 Pa.Code § 303.-6." *Id.,* 348 Pa.Superior Ct. at 615 n. 7, 502 A.2d at 716 n. 7.

We find that appellant's three criminal convictions comprised one criminal transaction due to the close temporal and logical relationship of the crimes. The Pennsylvania Commission on Sentencing has stated, in reference to section 303.6(a), that:

A "transaction" is a crime or crimes which were committed by a defendant at a single time or in temporally continuous actions that are part of the same episode, event, or incident ...

Pa.C.Sent.2d (September 1, 1986) p. 51. We find that the robbery, aggravated assault and possessing instruments of crime were part of a single contiguous train of criminal events with no substantial "break" in the criminal activity. *See Commonwealth v. Flenory,* 351 Pa.Superior Ct. 27, 504 A.2d 1341 (1986).

▇▇▇ Therefore, the sentencing judge erred in assigning a prior record score of "6" for aggravated assault and

possessing instruments of crime. In accordance with 204 Pa.Code § 303.6(a), the prior record score for these two offenses should have been "0" since robbery is the offense with the highest gravity score. This sentencing error caused provable prejudice to appellant.[10] We find that trial counsel was ineffective in failing to object to the calculation of prior record score. We remand for resentencing on the convictions of aggravated assault and possessing instruments of crime. Prior record scores of zero are to be used for both of these offenses, in accordance with the Sentencing Guidelines.

Appellant's final claim of ineffectiveness is based on counsel's failure to request that the sentence be vacated as a result of the sentencing judge's alleged failure to state on the record adequate reasons for deviating from the Sentencing Guidelines. Only the sentence imposed for possessing instruments of crime deviated from the guidelines. Since the lower court erroneously applied a prior record score of "6" when calculating the sentence for this conviction we must remand for resentencing. Therefore, we need not determine whether the reasons supporting the sentence were adequately articulated on the record.

This case is remanded for resentencing on the convictions of aggravated assault and possessing instruments of crime in accordance with this opinion. Jurisdiction relinquished.

WIEAND, J., filed a concurring statement.

10. Pursuant to the Sentencing Guidelines, 204 Pa.Code § 303.8(d), aggravated assault which causes serious bodily injury has an offense gravity score of "7". With a prior record score of "0" the minimum range for sentencing would be from 8 to 12 months, the aggravated minimum range would be from 12 to 18 months, the mitigated minimum range would be from 4 to 8 months. However, utilizing a prior record score of "6", the minimum range for sentencing increases to 43 to 64 months, the aggravated minimum range is 64 to 80 months, and the mitigated minimum range is 32 to 43 months.

While the actual sentence of 60 to 120 months imposed for aggravated assault fell within the Sentencing Guidelines when a prior record score of "6" was used, such a sentence would deviate substantially from the Guidelines if the sentence had been calculated using the correct prior record score of "0".

WIEAND, Judge, concurring:

I join Judge Cercone's excellent opinion. I write separately only to emphasize my continued adherence to the view that the merger of offenses for sentencing purposes is an issue which is waived by failure to raise it in a post-sentencing motion to modify the sentence where, as here, merger is not apparent from the face of the record and can be determined only after a review and analysis of the evidence. See: *Commonwealth v. Campbell*, 351 Pa.Super. 56, 505 A.2d 262 (1986) (Concurring Opinion by Wieand, J.). Under this view, appellant would have waived the merger issue by his failure to file a motion to modify the sentence imposed by the trial court.