J-S62004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TRAVIS HAWKINS, | |
| Appellant | No. 1821 WDA 2014 |

Appeal from the PCRA Order October 20, 2014
in the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0016744-2009

BEFORE: GANTMAN, P.J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 11, 2015**

Appellant, Travis Hawkins, appeals from the order of October 20, 2014, which granted in part and dismissed in part, following a hearing, his first, counseled petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.[1]  On appeal, Appellant claims he received ineffective assistance of counsel at all stages of the underlying proceedings. We affirm.

We take the underlying facts and procedural history in this matter from this Court's May 10, 2012 memorandum on direct appeal, the PCRA

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court granted Appellant's claim concerning the legality of sentence and resentenced Appellant on October 20, 2014. (**See** PCRA Court Opinion, 7/14/15, at 2).

court's July 14, 2015 opinion, and our independent review of the certified record.

On December 16, 2009, the Commonwealth charged Appellant with robbery, homicide, and related offenses for an incident that occurred on July 7, 2009, wherein Appellant robbed and fatally shot a jitney driver. On October 16, 2009, Appellant made a taped statement to police admitting to his part in the robbery and murder. (**See** Trial Court Opinion, 7/19/11, at 2). On September 24, 2010, trial counsel, Robert Foreman, Esquire, filed a motion to suppress Appellant's statement. On October 5, 2010, following a hearing, the trial court denied the motion.

Jury selection began on October 6, 2010. Immediately prior to the start of jury selection, Appellant indicated that he wanted new counsel, but was unable to provide any specific reasons. (**See** N.T. Trial, 10/06/10, at 49-50). The trial court denied the request. (**See id.** at 50).

> The trial commenced and the Commonwealth presented the testimony of eight witnesses, including the testimony of Detective Vonzale Boose concerning his interview of an alleged eyewitness, Dana Williams, which occurred on October 9, 2009, approximately three months after the shooting. On cross-examination [Appellant]'s counsel asked Detective Boose to confirm the date of the interview, in order to emphasize that the witness did not come forward until three months after the shooting. As Detective Boose left the stand, the Commonwealth proceeded to call Dana Williams to the stand. At that point, [Appellant] suddenly jumped to his feet and the record reflects the following:
>
>> THE [TRIAL] COURT: Thank you. You can step down. Who's your next witness?

[COMMONWEALTH]: Call Dana Williams to the stand.

(Pause)

[APPELLANT]: Oh, no. No. What you say? F[**]k that man.

THE [TRIAL] COURT: Mr. Woodcock, take the jury out. Mr. Woodcock, take the jury out.

[APPELLANT]: F[**]k that sh[*]t, man.

THE [TRIAL] COURT: Take the jury out. Go!

[APPELLANT]: Call me all these niggers and sh[*]t? All right. All right. Trying to sell me out with sh[*]t, man.

([Appellant] taken to the floor by sheriff personnel and removed from the courtroom as jury is recessed.)

THE [TRIAL] COURT: Can you enlighten the [trial] [c]ourt what just happened here, without violating attorney-client privilege?

[APPELLANT'S COUNSEL]: He was asking me why I even asked a question. I tried to explain to him why I asked a question.

THE [TRIAL] COURT: Let's go in chambers.

As to the cause of [Appellant]'s outburst, [Appellant's counsel] stated that [Appellant] had asked him why he had asked the question of Detective Boose about the date of the interview. [Appellant's counsel] explained to [Appellant] that he wanted to emphasize the fact that Dana Williams had waited three months after the shooting to come to the police. [Appellant] apparently asked [Appellant's counsel], "What does that have to do with it?" and "Why are you asking stupid questions?" [Appellant's counsel] indicated that earlier in the day, [Appellant] had apparently complained that he was not asking enough questions. Therefore, in response to [Appellant]'s

- 3 -

comment about a "stupid question," counsel responded, "Look. You bitch when I don't ask questions. You bitch when I ask questions," at which point [Appellant] erupted and accused counsel of using a racial slur. [Appellant's counsel] denied using the racial slur.

Recognizing the potential for prejudice, an inquiry was conducted as to the appropriate manner to proceed. The Commonwealth indicated that it believed that [Appellant] was purposely absenting himself and that he could remain in the bullpen during the trial. After discussion with counsel, it was determined that [Appellant] would be brought back to the courtroom, but if he acted inappropriately [ ], he would again be removed. Counsel for [Appellant's co-defendant] wished to consult with her client regarding a motion for a mistrial and the Assistant District Attorney wished to consult his superiors. [Appellant]'s counsel was advised that he should explain to [Appellant] that:

> Here's your choice. You are going to come back up
> in front of the Judge, and if he thinks you're going to
> act up, you're going to sit down here, and your trial's
> going to go on without you.

A recess was then taken to permit the Assistant District Attorney and counsel for [Appellant] and [Appellant's co-defendant] to consult with their clients.

Court was then reconvened at which time counsel for [Appellant's co-defendant] moved for a mistrial on the basis that [Appellant]'s behavior was highly prejudicial to [Appellant's co-defendant], especially in light of the conspiracy charge. Considering the nature of the outburst and the fact that [Appellant's co-defendant] had not caused or contributed to the outburst, [said] motion for a mistrial was granted [as to the co-defendant only].

[Appellant] was then asked to explain the reason for his outburst, at which time he indicated that his counsel had called him a "nigger". The [trial c]ourt indicated to [Appellant] that, based on [Appellant's counsel's] denial that he had used the racial slur and the [trial c]ourt's experience with [Appellant's counsel], it did not believe that [Appellant's counsel] had or would use the racial slur. Nevertheless, [Appellant] was given

- 4 -

the opportunity to return to the courtroom. [Appellant] was advised that:

> If you behave, I will let you stay in the courtroom. If you don't, if you are going to act up, you are going to sit down [in] the bullpen. We are just [sic] continue the trial against you. You will find out the result when it is done.

After again insisting that he had been called a racial slur, the [trial c]ourt specifically asked:

> THE [TRIAL] COURT: Are you going to be able to sit in the courtroom?
>
> [APPELLANT]: No.
>
> THE [TRIAL] COURT: [Appellant's counsel], in your opinion, he can't sit in the courtroom?
>
> [APPELLANT]: No.
>
> THE [TRIAL] COURT: All right. Take him down [to] the bullpen. We'll continue the trial without him. The jury's going to come down and continue.

[Appellant]'s counsel then again renewed his [m]otion to [w]ithdraw. This [m]otion was denied.

\* \* \*

At the commencement of the trial on October 8th, an inquiry was made regarding [Appellant]'s intention about testifying in his defense. [Appellant]'s counsel indicated that [Appellant] wanted to testify and it was explained by t[he trial c]ourt that [Appellant] would be permitted to testify, however, he would be restrained while in the courtroom. Th[e trial c]ourt stated:

> I really don't want to unshackle this guy because of his behavior in the courtroom. He is a danger to the jurors and the people in the courtroom by the way he acted up and the jury has already seen him shackled and dragged out so I don't know how it

would be prejudicial for him to be shackled while he is testifying.

[Appellant's counsel] argued that [Appellant] merely started to complain and did not physically attack anyone nor did he resist the deputies, going to the ground quickly. Th[e trial c]ourt responded by indicating that it disagreed with this assessment stating:

I am not taking that risk in my courtroom. He is a foot away, and I have no protection, No. 1. No. 2., I have fourteen jurors sitting here and I am not going to risk this guy going off again. Understand? It is too risky. And the way I saw it was this; he defiantly rose up against the deputies, was screaming obscenities and they had to wrestle him to the ground. He didn't go down easily. I disagree with that characterization.

T[he trial c]ourt also inquired whether or not [Appellant] was still waiving his presence in the courtroom until he testified. There was no indication that [Appellant], after considering his statements from the day before, changed his position regarding his willingness or ability to sit in the courtroom.

At the close of the Commonwealth's case an inquiry was also conducted to determine if [Appellant] intended to testify. At that time, [Appellant] was brought to the courtroom and [Appellant] was informed that he could return to the courtroom to testify, but he would be restrained with shackles. [Appellant], despite contending he wanted to testified [sic], refused to testify if he was required to be restrained. At no time did [Appellant] indicate that he would be willing to act appropriately so that he might return to the courtroom. [Appellant] also indicated that he did not wish to present character witnesses. [Appellant's] counsel also indicated that he did not want any further instruction to the jury that referenced [Appellant]'s outburst or his absence from the courtroom.

(**Commonwealth v. Hawkins**, No. 479 WDA 2011, unpublished

memorandum at *2-*7 (Pa. Super. filed May 10, 2012) (quoting Trial Court

Opinion, 7/19/11, at 3-7)).

On October 8, 2010, the jury found Appellant guilty of murder in the second degree, robbery, firearms not to be carried without a license, and conspiracy. On February 8, 2011, the trial court sentenced Appellant to an aggregate sentence of life imprisonment and a consecutive term of incarceration of not less than one hundred and eighty nor more than three hundred and sixty months. On February 9, 2011, the trial court allowed trial counsel to withdraw, and, the next day, appointed William E. Brennan, Esquire, to represent Appellant on appeal.

On March 9, 2011, Appellant filed a timely notice of appeal. On appeal, Appellant challenged the trial court's refusal to allow counsel to withdraw, its decision to deny Appellant's motion for a mistrial following his outburst during trial, and the adequacy of Appellant's waiver of his presence at trial. (*See Hawkins*, *supra* at *8). On May 10, 2012, this Court denied Appellant's direct appeal on the merits. (*See id.* at *8-*17). On October 16, 2012, the Pennsylvania Supreme Court denied Appellant's request for leave to appeal.

On October 25, 2013, Appellant, acting *pro se*, filed a PCRA petition. On October 30, 2013, the PCRA court appointed counsel to represent him. On March 11, 2014, counsel filed an amended PCRA petition. On October 15, 2014, a PCRA hearing took place. Appellant and trial counsel both testified. The parties read a stipulation into the record as to appellate counsel's testimony. On October 20, 2014, the PCRA court denied the

petition except for the sentencing issue referenced in note 1, **supra**. On October 24, 2014, PCRA counsel moved to withdraw. On October 29, 2014, the PCRA court granted the motion and appointed appellate counsel. On October 30, 2014, new counsel filed both a notice of appeal and a statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). On July 14, 2015, the PCRA court issued an opinion. **See** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

1. Whether [trial counsel] was ineffective in failing to adequately consult, after the denial of suppression, with [Appellant] on accepting or reject[ing] the plea offer of 25 to 50 years [of] incarceration[,] which remained open up to the start of trial and where [Appellant's] chances of obtaining acquittal of [f]irst-[d]egree [m]urder and [s]econd [d]egree [m]urder were extremely bleak once his statement to police was determined to be admissible at trial and where [Appellant] would have accepted said offer if he had been advised of the high likelihood of conviction of [f]irst-[d]egree [m]urder or [s]econd-[d]egree [m]urder?

2. Whether [trial counsel] was ineffective for failing to timely object to the colloquy on [Appellant] waiving his presence at trial as inadequate?

3. Whether [appellate counsel] was ineffective for failing to litigate on direct appeal the denial of suppression of [Appellant's] statement to police?

(Appellant's Brief, at 3).

Here, Appellant claims he received ineffective assistance of counsel at all stages of the proceedings below. (**See id.** at 27-46). It is long settled that "[o]ur standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is

supported by the evidence of record and whether it is free of legal error. We will not disturb findings that are supported by the record." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa. Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citations omitted). "The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." ***Commonwealth v. Duffey***, 889 A.2d 56, 61 (Pa. 2005) (citation omitted). Further, to be eligible for relief pursuant to the PCRA, Appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in Section 9543(a)(2). ***See*** 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. ***See*** 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

Further, counsel is presumed effective, and an appellant bears the burden to prove otherwise. ***See Commonwealth v. McDermitt***, 66 A.3d 810, 813 (Pa. Super. 2013). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. ***See Strickland v. Washington***, 466 U.S. 668, 687 (1984); ***Commonwealth v. Jones***, 815 A.2d 598, 611 (Pa. 2002). An appellant must demonstrate that:

(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001), *abrogated on other grounds by Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Jones*, *supra* at 611 (citation omitted).

In the first claim, Appellant argues that trial counsel was ineffective for failing to consult adequately with him with respect to a plea offer and advise him that he had little chance of succeeding at trial after the denial of his motion to suppress his admissions to the police. (*See* Appellant's Brief, at 27-35). We disagree.

With respect to counsel's duty to consult with a client about a plea offer, this Court has stated:

> Defense counsel has a duty to communicate to his client, not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial.
>
> *   *   *
>
> The decision whether to plead guilty or contest a criminal charge is probably the most important single decision in any criminal case. This decision must finally be left to the client's wishes; counsel cannot plead a man guilty, or not guilty, against his will. But counsel may and must give the client the benefit of his professional advice on this crucial decision, and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or

- 10 -

the other is in the client's best interest. Such persuasion is most often needed to convince the client to plead guilty in a case where a not guilty plea would be totally destructive.

*Commonwealth v. Copeland*, 554 A.2d 54, 60-61 (Pa. Super. 1988), *appeal denied*, 565 A.2d 1165 (Pa. 1989) (citations omitted).[2]

Instantly, trial counsel testified at the PCRA hearing that he conveyed the Commonwealth's plea offer to Appellant, discussed it with him, and advised that it might be in his best interests to accept the offer because he had little chance of succeeding at trial, regardless of whether or not the trial court admitted his statement to police. (*See* N.T. PCRA Hearing, 10/15/14, at 22-24). Although Appellant testified that he and counsel did not discuss the offer in detail, he conceded that he was aware of the plea deal and knew that he was being offered a sentence of not less than twenty-five nor more than fifty years of incarceration in return for his guilty plea. (*See id.* at 8). Appellant also admitted he understood that, when the trial court denied his motion to suppress, it meant that his statement to police, in which he admitted to second degree murder and robbery, would be presented to the jury if he went to trial. (*See id.* at 9, 12-13). However, Appellant insisted that trial counsel told him not to accept the guilty plea because "[H]e got this. Don't worry about it." (*Id.* at 9). Appellant averred that trial counsel

_____

[2] More recently, the United States Supreme Court discussed claims of ineffectiveness with respect to counsel's duty to convey and consult regarding plea offers. *See Missouri v. Frye*, 132 S. Ct. 1399, 1405-06 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 1395-96 (2012).

promised him an acquittal. (*See id.* at 13). He presented no further evidence or argument regarding trial counsel's legal advice on the decision to reject the plea offer and proceed to trial.

The record reflects that, immediately prior to jury selection, the Commonwealth read the terms of its offer into the record, stating that Appellant had initially agreed to accept the offer and then changed his mind. (*See* N.T. Trial, at 44-45). The Commonwealth then informed Appellant that, if he lost at trial, he would be facing a mandatory life sentence without the possibility of parole. (*See id.* at 45). Appellant agreed that he understood this and the terms of the plea offer, and discussed it with counsel. (*See id.* at 46-47). Thus, the record does not support Appellant's contention that counsel did not adequately discuss the plea deal with him.

Further, in its decision denying the PCRA petition, the court credited counsel's testimony regarding discussions about the plea offer and did not credit Appellant's testimony. (*See* PCRA Court Opinion, 7/14/15, at 5). The credibility findings of the PCRA court are entitled to great deference. *See Commonwealth v. Martin*, 5 A.3d 177, 197 (Pa. 2010), *cert. denied*, 131 S. Ct. 2960 (2011). We have no authority to disturb a credibility finding, if the record supports it. *See Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011) ("Indeed, where the record supports the PCRA court's credibility determinations, such determinations are binding on a reviewing court.") (citation omitted).

In light of this record, we agree with the PCRA court's finding that trial counsel conveyed the Commonwealth's plea offer to Appellant and consulted with him about it. Therefore, we affirm the PCRA court's denial of relief on this claim.

In the second claim, Appellant avers that trial counsel was ineffective for failing to object to the trial court's inadequate colloquy with respect to his right to be present during trial. (**See** Appellant's Brief, at 36-45). Specifically, Appellant argues that the Pennsylvania Supreme Court's decision in **Commonwealth v. Vega**, 719 A.2d 227, 230 (Pa. 1998), requires the trial court to conduct a full colloquy to ensure that a defendant knowingly waives his right to be present at trial. (**See id.** at 36). We disagree.

Initially we note that, on direct appeal, Appellant argued that he did not knowingly waive his right to be present at trial because the trial court failed to conduct a colloquy. (**See Hawkins**, **supra** at *13). This Court found that Appellant had waived the issue of the trial court's failure to conduct a colloquy because Appellant did not include it in his Rule 1925(b) statement. (**See id.** at *13-*14). Nonetheless, this Court addressed the merits of whether Appellant knowingly waived his right to be present at trial and concluded he did. (**See id.** at *15-*17). Therefore, this issue was previously litigated and not subject to PCRA relief. **See** 42 Pa.C.S.A. § 9543(a)(3).

Moreover, we note that **Vega** is inapposite. In **Vega**, prior to the start of trial, after the trial court refused the defendant's request for appointment of new counsel, the defendant stated that he did not wish to be present during trial. **See Vega**, **supra** at 228-29. Our Supreme Court held that a defendant is entitled to a colloquy to "insure a defendant is aware of the dangers and disadvantages of waiving his right to be present during trial." **Id.** at 230. However, our Supreme Court limited its decision to cases where a defendant makes a specific or express waiver of his right to be present at trial, distinguishing it from cases where "a defendant has impliedly waived his right to be present at trial through his conduct or voluntary unexplained absence." **Id.** at 229.

In **Commonwealth v. Basemore**, 582 A.2d 861 (Pa. 1990), *cert. denied*, 502 U.S. 1102 (1992), our Supreme Court addressed the situation where, as here, a defendant misbehaved in the courtroom. While acknowledging a defendant's absolute right to be present during every stage of a criminal trial, our Supreme Court explained:

> . . . a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Basemore*, *supra* at 867 (quoting *Illinois v. Allen*, 397 U.S. 337, 343 (1970)).  In *Basemore*, the defendant made several outbursts, and the trial court warned him that, if he persisted, he would be removed from the courtroom.  *See id.* at 867-68.  After another outburst, the court had the defendant removed.  *See id.* at 868.  However, several hours later, it informed defendant that, if he agreed not to disrupt the proceedings, he could return to the courtroom.  *See id.*  When the defendant refused, he was again removed, although after agreeing to behave immediately prior to closing arguments, he was permitted to return to the courtroom.  *See id.*  The *Basemore* Court held that the trial court had done all that was required:  (1) warning the defendant that continued disruptive behavior would result in his removal from the courtroom; (2) giving the defendant the opportunity to return if he would agree to behave; and (3) advising the jury that the defendant's absence was unrelated to his guilt.  *See id.*

Here, Appellant's conduct was akin to that of the defendant in *Basemore*, therefore he made an implied waiver of his right to be present at trial.  *See id.* at 867.  Because of this, he was not entitled to the type of colloquy required by *Vega*, where the defendant made an express waiver of his right to be present.  *See Vega*, *supra* at 229.  Thus, there was no basis for trial counsel to object to the trial court's failure to conduct a colloquy. We will not find counsel ineffective for failing to make a non-meritorious objection.  *See Commonwealth v. Floyd*, 484 A.2d 365, 368 (Pa. 1984).

Therefore, there is no basis to upset the PCRA court's finding that Appellant was not entitled to PCRA relief on this basis.

In his third claim, Appellant argues that appellate counsel was ineffective for failing to raise the issue of the denial of his motion to suppress on direct appeal. (*See* Appellant's Brief, at 46-47). We disagree.

Appellant's argument on this issue is undeveloped. After citing some boilerplate law on our scope of review of the denial of a motion to suppress, Appellant baldly states, with no explanation, that it was "reasonably likely" that the suppression ruling would have been reversed on appeal. (*Id.* at 46). At no point does Appellant actually discuss the suppression hearing itself, the trial court's basis for denial of the motion, or why he believes that he would have been likely to succeed on direct appeal but for counsel's failure to raise the issue. Thus, Appellant has failed to set forth the ineffectiveness analysis required by *Strickland*. *See Strickland*, *supra* at 687. Because Appellant has not established any of the three prongs, we must deem counsel's assistance constitutionally effective. *See Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (holding that where appellant fails to address three prongs of ineffectiveness test, he does not meet his burden of proving ineffective assistance of counsel, and counsel is deemed constitutionally effective). Thus, there is no basis to

upset the PCRA court's finding that Appellant was not entitled to PCRA relief

on this basis.[3]

_____

[3] Moreover, Appellant's claim is without merit. We have long held that appellate counsel is not required "to raise and to argue all colorable, nonfrivolous issues" that a criminal defendant wishes to raise on appeal. *Commonwealth v. Showers*, 782 A.2d 1010, 1015-16 (Pa. Super. 2001), *appeal denied*, 814 A.2d 677 (Pa. 2002) (citing *Jones v. Barnes*, 463 U.S. 745 (1983) for proposition that expert appellate advocacy consists of removal of weaker issues and focus on strong issues; and citing *Commonwealth v. Yocham*, 375 A.2d 325 (Pa. 1977) and *Commonwealth Laboy*, 333 A.2d 868, 870 (Pa. 1975) in support of the same view). In finding that this claim lacked merit, the PCRA court stated:

> In the present case, the sole issue to be resolved at the suppression hearing was the credibility (of the detective who questioned Appellant), who testified that [Appellant] was advised of his right to counsel and, having been so informed, voluntarily waived this right and gave a recorded statement. After considering the testimony and reviewing the *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] rights form signed by [Appellant] and listening to [Appellant's] acknowledgment that his statement was voluntary on the tape-recorded statement, the determination was made that [Appellant] waived his right to counsel. This conclusion is clearly supported by the evidence and, therefore, there is no arguable merit to the claim that appellate counsel was ineffective for failing to litigate the issue on appeal. . . .

(PCRA Ct. Op., 7/14/15, at 11-12). It is settled that, on appeal, we are bound by a trial court's factual findings, so long as they are supported by the record, and must defer to its credibility determinations. *See Commonwealth v. Wright*, 867 A.2d 1265, 1267 (Pa. Super. 2005), *appeal denied*, 879 A.2d 783 (Pa. 2005), *cert. denied*, 546 U.S. 1104 (2006). Our review of the record, supports the PCRA court's finding that we would have had no basis to overturn the trial court's findings on appeal and, therefore, appellate counsel was not ineffective for failing to raise this claim. The PCRA court was correct to deny relief on this basis. *See Jones*, *supra* at 611; *Pierce*, *supra* at 213.

Accordingly, for the reasons discussed above we find that PCRA court's determination is supported by the evidence of record and is free of legal error. ***See Ousley***, ***supra*** at 1242. Therefore, we affirm the denial of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015