J-S69011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ERIC EUGENE SMALL, | |
| Appellee | No. 245 MDA 2016 |

Appeal from the PCRA Order January 19, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0001458-2011

BEFORE:  STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                      **FILED APRIL 21, 2017**

The Commonwealth appeals from the order granting the petitioner, Eric Eugene Small (Appellee), a new trial pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546, based on a claim of after-discovered evidence.  We conclude from the record that the "new" evidence, a hearsay report of a purported confession naming someone else as the shooter, is merely cumulative of similar testimony already given at trial. Moreover, Appellee presents no persuasive evidence or argument that the cumulative testimony would compel a different verdict at any re-trial. Accordingly, we reverse and remand.

---

[*] Retired Senior Judge assigned to the Superior Court.

On August 9, 2012, a jury convicted Appellee of murder of the first degree, 18 Pa.C.S.A. § 2502(a), and firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1).[1]

Appellee was convicted for the shooting death of William Price outside of the Club Egypt in Harrisburg, Pennsylvania on March 7, 2011. A few days before the fatal shooting, at another club (the Rebound Club), Price got into a shoving match with Kenosha Tyson, including his pulling her hair. (*See* N.T. Trial, 8/07/12, at 126-128; *see also* N.T. PCRA Hearing, 5/12/15, at 5). At trial, Ms. Tyson testified that she had been the girlfriend of Pedro Espada; he was the father of two of her children.[2] (*See* N.T. Trial, 8/07/12, at 120, 131). There was testimony that Appellee was good friends with Espada, and that they considered themselves to be like brothers. (*See id.* at 169, 192-93; 8/08/12, at 125-26). Neither Appellee nor Espada was at the Rebound Club that night. (*See id.* 8/07/12, at 129).

On the night of the shooting, Price, Espada, and Appellee were all at the Club Egypt. Three witnesses testified for the Commonwealth that at closing time they saw Appellee leaving the club, walking beside the victim, Price, with his (Appellee's) arm around him, shortly before Price was fatally

---

[1] The Commonwealth initially charged, but later *nolle prossed*, a count for persons not to possess a firearm, 18 Pa.C.S.A. § 6105(a)(1).

[2] Although Ms. Tyson testified at trial that she was no longer Espada's girlfriend, at the PCRA hearing she testified that she was again pregnant with his child. (*See* N.T. PCRA Hearing, 5/12/15, at 55).

shot in the face. (**See** trial testimony of Shamar Evans, **id.** 8/07/12, at 205-208; Andre Knight, **id.** 8/08/12, at 52-59; Ali Williams, **id.** at 85).

The Commonwealth tried Appellee for killing Price. "The Commonwealth specifically contended that [Appellee] shot Mr. Price because of his allegiance to Mr. Espada, and sought retribution for the assault on Mr. Espada's children's mother, Ms. Tyson. Throughout the trial, the defense theory was that Mr. Espada was actually [the] individual who shot Mr. Price, not [Appellee]." (PCRA Court Opinion, 1/19/16, at 4).

The Commonwealth correctly observes that proof of motive is not necessary for a conviction of first degree murder. (**See** Commonwealth's Reply Brief, at 1); **see also Commonwealth v. Briggs**, 12 A.3d 291, 340 n.44 (Pa. 2011), *cert. denied*, 565 U.S. 889 (2011).[3] Nonetheless, the jury was free to infer from the evidence presented that Appellee shot Price to avenge the assault on Tyson, out of allegiance to Espada, as contended by

---

[3] Motive may, however, be probative of intent to kill if the evidence establishes a motive to kill. **See Commonwealth v. Tomoney**, 412 A.2d 531, 535 (Pa. 1980) (superseded by statute on another ground) (testimony indicated accused had desire to retaliate for earlier killing); **Commonwealth v. Robinson**, 364 A.2d 665, 669 (Pa. 1976) (jury could reasonably have inferred that defendant intended to vent malice toward estranged wife and her employer); **Commonwealth v. Zimmerman**, 504 A.2d 1329, 1335 (Pa. Super. 1986) (Commonwealth could properly argue from evidence that sexual desire was motive in first degree murder, even though sex crime was not charged).

the Commonwealth, or that Appellee acted in concert with Espada. (**See** PCRA Ct. Op., at 4).

Eyewitnesses saw Espada walking near Price and Appellee shortly before the shooting. After Price was shot, witnesses saw Espada fire several shots, possibly to scare away anyone who might want to come closer, or to assist the victim. Shortly after the shooting, both Espada and Appellee were seen running away toward the riverfront. Some testimony suggested that they went to the waterfront area to hide the murder weapon.

At the PCRA hearing, trial counsel testified that the defense theory of the case was that Espada shot Price himself in retaliation for the harassment of Tyson. (**See** N.T. PCRA Hearing, 5/12/15, at 5-6). Other witnesses supported this theory. At trial, Deleon Dotson, a reluctant Commonwealth witness, testified on cross-examination that Espada told him that he (Espada) shot Price, from a distance of three to five feet away. (**See** N.T. Trial, 8/08/12, at 135).[4]

_____

[4] Other testimony cast doubt on the three-to-five feet shooting scenario. Wayne Ross, M.D., the forensic pathologist who performed the autopsy, testified that Price received a pressed contact gunshot wound; the bullet entered Price's face on the left near his eye and exited on the right. (**See** N.T. Trial, 8/07/12, at 22). Dr. Ross testified that he observed soot around the bullet hole, which meant that the barrel was jammed or pressed into Price's face. (**See id.**). He confirmed that a pressed contact gunshot wound could **not** be made by mere touching. It required that the gun be jammed, or pushed, into the skin. (**See id.** at 26-27). Furthermore, there was testimony from multiple eyewitnesses that Appellee had his right arm around Price, and was walking on Price's left side immediately before the
*(Footnote Continued Next Page)*

- 4 -

Additionally, Harrisburg Detective Ryan Neal, of the Special Operations Unit of the Criminal Investigation Division, testified that he interviewed Appellee's sister, Lisa Small. (**See id.** at 5-9). Notably for this appeal, on cross-examination, Detective Neal testified that Ms. Small confirmed that she gave him a statement (her second) in which she related that Jasmine Spriggs, another girlfriend of Espada, told Ms. Small that Espada told her (Ms. Spriggs) that he had shot Price. (**See id.** at 11).[5]

The jury convicted Appellee. On October 1, 2012, the trial court sentenced him to an aggregate term of life imprisonment.[6] The court denied Appellee's post-sentence motion, including a challenge to the weight of the evidence, on October 15, 2012.

Appellee filed a direct appeal, asserting the weight claim. He argued that the testimony of several witnesses at trial, *viz.*, that another individual,

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

shooting. If Espada had been the shooter, and he was shooting from three to five feet away, he would have had to shoot around, or past, Appellee, his friend.

[5] In addition to Dotson and Lisa Small, Kenneth Hibbert and Jeffrey Reid, sometime cellmates of Appellee, also testified that he told them he killed William Price. (**See** N.T. Trial, 8/09/12, at 10-13; **id.** at 27-28; **see also** Trial Court Opinion, 1/31/13, at *4).

[6] The Honorable Scott A. Evans of the Court of Common Pleas of Dauphin County presided over Appellee's trial, imposed sentence, and in his Rule 1925(a) opinion, requested this Court to affirm the judgment of sentence on direct appeal. Judge Evans also issued the order for a new trial which is the subject of this collateral appeal.

Espada, was seen firing a gun shortly after the homicide and had admitted shooting Price to several other people, rendered his (Appellee's) guilty verdict contrary to the weight of the evidence.

A panel of this Court affirmed the judgment of sentence on the basis of the trial court opinion, rejecting the weight claim. (*See Commonwealth v. Small*, No. 2021 MDA 2012, 2013 WL 11253720, (Pa. Super. filed October 9, 2013) (unpublished memorandum), *appeal denied*, 94 A.3d 1009 (Pa. 2014)).

The trial court explained the reasoning for its decision as follows:

> A review of the record in this case reveals that, while there are conflicts in the evidence, such discrepancies are not sufficient to render the jury verdict so contrary to the evidence as to shock one's sense of justice. There was more than ample evidence of record to support the fact-finder's guilty verdict. [Appellee] was seen by a number of witnesses walking in very close proximity to the victim moments before a gunshot was heard; [Appellee] was seen standing over the victim immediately thereafter, and then ran away; [Appellee] was close enough to the victim to inflict a contact wound to the victim's head; and [Appellee] made incriminating statements to others regarding his involvement. **It is worth reiterating that it is solely within the fact-finder's province to assess weight and credibility of the evidence.**

(Trial Ct. Op., 1/31/13, at *6) (citations omitted) (attached as an exhibit to *Small*, *supra*, No. 2021 MDA 2012, at 2013 WL 11253720) (emphasis added). As noted, on June 20, 2014, our Supreme Court denied Appellee's petition for allowance of appeal. (*See Commonwealth v. Small*, 94 A.3d 1009 (Pa. 2014)). Appellee did not petition the United States Supreme Court for a writ of *certiorari*.

- 6 -

Instead, Appellee filed a timely *pro se* PCRA petition on September 2, 2014. The PCRA court appointed counsel, who filed a supplementary petition alleging ineffective assistance of counsel and newly found evidence. On or about March 12, 2015, Ms. Tyson gave counsel a notarized statement, and later testified at the PCRA hearing, that the morning after the murder Espada came to her house and told her that he shot Price.[7]

After hearings, the PCRA court rejected all the claims of ineffective assistance, but ordered a new trial for Appellee on the claim of newly found evidence. (**See** Opinion and Order, 1/19/16 at 17; **see also id.** at 2 n.2). The Commonwealth timely appealed.[8]

The Commonwealth presents two questions for our review:

A. Whether the PCRA court erred in finding Kenosha Tyson's testimony to be newly discovered evidence when her testimony was cumulative to Deleon Dotson's testimony and Lisa Small's testimony that was presented at [Appellee's] jury trial wherein both witnesses testified that they heard Pedro Espada admit to shooting William Price?

B. Whether the PCRA court abused its discretion in finding Kenosha Tyson's testimony to be credible when her testimony was essentially recantation of silence and when she exercised

_____

[7] We observe that Ms. Tyson's Affidavit of Fact exhibits a sophistication of style and use of legal concepts and terminology not readily apparent in her testimony at the PCRA hearing.

[8] The Commonwealth timely filed a court-ordered statement of errors. The PCRA court did not file a Rule 1925(a) opinion. The court previously filed an order and opinion on January 19, 2016, when it ordered a new trial. **See** Pa.R.A.P. 1925.

extreme delay in coming forward to elicit such testimony years after [Appellee's] trial and when her testimony was inconsistent?

(Commonwealth's Brief, at 4) (some capitalization omitted).

Our standard and scope of review for the grant or denial of PCRA relief are well-settled. An appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. **See Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014). The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. **See id.**

> In reviewing the decision of a trial court to grant a new trial based on after-discovered evidence, this Court "ask[s] only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." **Commonwealth v. Padillas**, 997 A.2d 356, 361 (Pa. Super. 2010) (citation omitted). "If a trial court erred in its application of the law, an appellate court will correct the error." **Id.**

**Commonwealth v. Griffin,** 137 A.3d 605, 608 (Pa. Super. 2016), *appeal denied*, No. 181 EAL 2016, 2016 WL 4743483 (Pa. Sept. 12, 2016).[9] "The proposed new evidence must be 'producible and admissible.'" **Id.** (citation omitted).

_____

[9] As of the filing date of this decision, the denial of allowance of appeal has not been released for publication in the permanent law reports. Until release, it is subject to revision or withdrawal.

"[W]e afford no deference to [the PCRA court's] legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*) (citation and some internal punctuation omitted), *appeal denied*, 101 A.3d 785 (Pa. 2014).

We also note the following applicable legal principles:

> The PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). A petitioner seeking relief on this basis must establish the evidence: (1) was discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) is not cumulative; (3) is not being used solely to impeach credibility; and (4) would likely compel a different verdict. As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones. ***See Commonwealth v. Pagan***, 597 Pa. 69, 950 A.2d 270, 292–93 (2008).

***Commonwealth v. Solano***, 129 A.3d 1156, 1179–80 (Pa. 2015) (one citation omitted).

"Recantation testimony is extremely unreliable. When the recantation involves an admission of perjury, it is the **least reliable** form of proof. The trial court has the responsibility of judging the credibility of the recantation." ***Commonwealth v. Henry***, 706 A.2d 313, 321 (Pa. 1997) (citations omitted) (emphasis added).

> While [our Supreme] Court has often acknowledged the limitations inherent in recantation testimony, ***see, e.g.,*** ***Commonwealth v. Floyd,*** 506 Pa. 85, 94, 484 A.2d 365, 369 (1984) (characterizing recantation testimony as "extremely

unreliable"), we have not foreclosed the possibility that, in some instances, such testimony may be believed by the factfinder and thus form a basis for relief. ***See generally Commonwealth v. McCracken***, 540 Pa. 541, 659 A.2d 541 (1995) (upholding a grant of relief in the form of a new trial based upon the recantation testimony of a central witness). For this to occur, however, the testimony must be such that it could not have been obtained at the time of trial by reasonable diligence; must not be merely corroborative or cumulative; cannot be directed solely to impeachment; and must be such that it would likely compel a different outcome of the trial. ***See generally id.*** at 549, 659 A.2d at 545.

***Commonwealth v. Williams***, 732 A.2d 1167, 1180 (Pa. 1999); ***accord***, ***Commonwealth v. Smith***, 17 A.3d 873, 887 (Pa. 2011) (concluding witness's post-trial affidavit stating she saw someone other than defendant shoot victim, which was contrary to her statements to police and testimony at trial, did not constitute after-discovered evidence of defendant's actual innocence and thus did not provide grounds to grant defendant new trial on murder charge).

Here, on independent review, we are constrained to conclude that the PCRA court erred in applying the appropriate legal principles to this case and abused its discretion in granting Appellee a new trial.

Preliminarily, we also observe that the PCRA court misstates the record by declaring that "Ms. Tyson did not contradict her prior statements or trial testimony." (PCRA Court Opinion, 1/19/16, at 14).[10] She did.

_____

[10] For completeness and the clarity of the record, we also note that the PCRA court misapprehends the gender of Ali Williams as female. (***See*** Trial Ct.
*(Footnote Continued Next Page)*

- 10 -

At the PCRA hearing, the prosecutor had Ms. Tyson read into the record her response in her signed statement from 2011 (shortly after the murder) to the question, "Have you spoken to Pedro [Espada], Eric [Small] or Dominique [Ford] since the homicide?" (N.T. PCRA Hearing, 5/12/15, at 62). In pertinent part, Ms. Tyson stated, "I spoke to Pedro but didn't talk about it." (*Id.* at 63). The prosecutor responded, "So the statement you are giving now is very different from what you said four years ago, isn't it?" Ms. Tyson answered, "Yeah." (*Id.*).[11]

Accordingly, the PCRA court's re-characterization of Ms. Tyson's newly offered statement as a "'recantation' of silence" is unsupported by the record and technically incorrect. (PCRA Ct. Op., 1/19/16, at 14). Moreover, the PCRA court offered no authority in any statutory or case law to support its neologism, "recantation of silence".[12] On independent review, we find none.

_(Footnote Continued)_ ————————————

Op., 1/31/13, at 3; PCRA Ct. Op., 1/19/16, at 3). Ali Williams is a male. (*See* N.T. Trial, 8/08/12, at 93; *see also id.* at 82-83).

[11] Ms. Tyson then attempted to amend this concession by blaming the police for writing down "what I was told," rather than what she said. (N.T. PCRA Hearing, 5/12/15, at 63).

[12] Both the Commonwealth and Appellee also refer to a "recantation of silence." Based on our independent review of the record, we remain unpersuaded.

In any event, re-labeling Ms. Tyson's contradictory declaration as a recantation of silence does not and could not alter the application of well-settled legal principles to the evaluation of her statement.

Most notably, Appellee fails to establish that Ms. Tyson's recantation meets the four prongs of the test for acceptance of newly discovered evidence. *See Solano*, *supra* at 1179–80 (citing *Pagan*, *supra* at 292–93); *see also Williams*, *supra* at 1180. Here, the Commonwealth does not dispute the first or the third prongs. (*See* Commonwealth's Brief, at 21). Therefore, we decline to address them.[13]

On the second prong, the Commonwealth argues that Ms. Tyson's testimony was merely cumulative or corroborative of the testimony of Deleon Dotson and Lisa Small. (*See* Commonwealth's Brief at 20-33). We agree.

Even the PCRA court concedes, albeit rather reluctantly, that Ms. Tyson's testimony was corroborative and cumulative to other witnesses' trial testimony. (*See* PCRA Ct. Op., 1/19/16, at 15: ". . . it can be argued . . ."). Nevertheless, invoking "modification and common sense," the court maintains that Tyson's affidavit and PCRA testimony are "not **merely** cumulative or corroborative." (*Id.*) (emphasis added). "In the same vein,"

_____

[13] We confirm for clarity that our decision not to address the two issues the Commonwealth did not raise is procedural only. We express no conclusion on the merits (or lack thereof) of the foregone claims.

- 12 -

the PCRA court continues, "her testimony is not to be used solely to impeach the credibility of a witness." (*Id.*). We are constrained to disagree.

The PCRA court's conclusory denials are unsupported and unpersuasive. Specifically, it never identifies what other purpose Ms. Tyson's testimony would serve. Instead, citing *Commonwealth v. McCracken*, 659 A.2d 541 (Pa. 1995), the PCRA court concludes that because much of the evidence against Appellee was circumstantial, and "Ms. Tyson's testimony regarding Mr. Espada's admission goes to the very heart of the defense's theory at trial," Appellee is entitled to a new trial.[14] (PCRA Ct. Op., 1/19/16, at 15). We conclude that the PCRA court's reliance on *McCracken* is misplaced.

In *McCracken*, the Majority—over the vigorous dissent of then-Justice, later Chief Justice Castille (which was joined by later Chief Justice Cappy)—reasoned that the recanting witness, Michael Aldridge, was the only witness who identified the appellant as the perpetrator of the murder and robbery and reinstated the grant of a new trial. *See McCracken*, *supra* at 546. Here, multiple eyewitnesses identified Appellee as walking arm-in-arm with the victim when the fatal shooting occurred.

_____

[14] We observe that the fact that Ms. Tyson's testimony goes to the heart of the defense theory only serves to confirm that the testimony is cumulative, corroborative, and previously litigated.

On independent review, we conclude that more pertinent authority is found in **Padillas**, **supra** at 365 ("Where the new evidence, however, supports claims the defendant previously made and litigated at trial, it is probably cumulative or corroborative of the evidence already presented.") (concluding confession of defendant's brother not reliable solely as statement against penal interest; and relationship with brother was obvious motive to fabricate; court should have viewed recantation as suspect; dubious circumstances surrounding recantation did not make different verdict based on confession likely on retrial); and **Griffin**, **supra** at 608 (proposed new evidence must be producible and admissible.).

"A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is **not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement**." **Commonwealth v. Woods**, 575 A.2d 601, 603 (Pa. Super. 1990), *appeal denied*, 608 A.2d 30 (Pa. 1992) (emphasis added).

Here, on independent review, we are at a loss to discern what corroborating circumstances are supposed to indicate the trustworthiness of Ms. Tyson's latest statement. She denied reading the inconsistent statement she had signed in 2011. (**See** N.T. PCRA Hearing, 5/12/15, at 64). She blamed "many people", including family, friends, **and** the police for her reluctance to testify at trial about her now "new" evidence. (**Id.** at 59). She claimed she had called the police about witness intimidation but was

ignored. (*See id.* at 68). She testified she was **still** receiving threats, but didn't care what people were saying, and just chose to ignore it. (*See id.* at 69).

Because the recantation evidence offered at the PCRA hearing was merely corroborative and cumulative of evidence already presented at trial, we conclude that the PCRA court erred in its legal conclusion and abused its discretion in granting Appellee a new trial. *See Solano*, *supra* at 1179–80; *Williams*, *supra* at 1180; *Smith*, *supra* at 887.

> Furthermore, Pennsylvania courts have held that only those hearsay declarations against interest which were originally made and subsequently offered at trial under circumstances that provided **considerable assurance** of their reliability should be admitted into evidence. Finally, we note that **recantation evidence is highly suspect, even when it involves an admission of perjury**.

*Woods*, *supra* at 603. (citations and internal quotation marks omitted) (emphases added).

Here, the PCRA court accepted Ms. Tyson's statement with no apparent corroboration. In fact, the court did not even make an assessment of her credibility, simply noting its conclusory but rather speculative opinion that "**If credited by a jury**, Ms. Tyson's statement and testimony regarding Mr. Espada's admission to her would likely result in a different verdict." (PCRA Ct. Op., 1/19/16, at 16) (emphasis added). That is not the test. *See Henry*, *supra* at 321 (trial court, not jury, has responsibility of judging credibility of recantation).

The PCRA court now opines that "[t]he evidence against [Appellee] was certainly not overwhelming, especially when there was also evidence supporting Mr. Espada's involvement." (PCRA Ct. Op., 1/19/16, at 16). This assessment stands in stark contrast to the same court's assessment on direct appeal:

> There was more than ample evidence of record to support the fact-finder's guilty verdict. [Appellee] was seen by a number of witnesses walking in very close proximity to the victim moments before a gunshot was heard; [Appellee] was seen standing over the victim immediately thereafter, and then ran away; [Appellee] was close enough to the victim to inflict a contact wound to the victim's head; and [Appellee] made incriminating statements to others regarding his involvement. **It is worth reiterating that it is solely within the fact-finder's province to assess weight and credibility of the evidence.**

(Trial Ct. Op., 1/31/13, at *6) (emphasis added).

The PCRA court now concludes that "[i]n light of the circumstantial evidence at trial, and not a shred of forensic evidence to support [Appellee] as the shooter, a different outcome is probable." (PCRA Ct. Op., 1/19/16, at 16). We disagree.

It bears noting that while much of the evidence at trial may have been circumstantial, it is plainly beyond dispute that multiple witnesses placed Appellee side by side with his arm around the victim, Price, at the time of the shooting. The medical examiner determined that the fatal shot was a contact wound. Furthermore, there is nothing defective or deficient about circumstantial evidence.

In reviewing whether the evidence was sufficient to support a first-degree murder conviction or convictions, the entire trial record must be evaluated and all evidence considered. In applying the above standards, we bear in mind that **the Commonwealth may sustain its burden by means of wholly circumstantial evidence**, and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Poplawski*, 130 A.3d 697, 709 (Pa. 2015), *cert. denied*, 137 S. Ct. 89 (2016) (citations and internal quotation marks omitted) (emphasis added).

Ms. Tyson's recantation testimony, identifying Espada as the shooter, was merely cumulative and corroborative of evidence previously presented at trial, in support of the acknowledged defense theme of the case. "Where the new evidence . . . supports claims the defendant previously made and litigated at trial, it is probably cumulative or corroborative of the evidence already presented." *Padillas*, *supra* at 365 (citations omitted).

"As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones." *Solano*, *supra* at 1180 (citation omitted). Accordingly, we decline to address the other deficiencies of the purported recantation testimony.

Order reversed.  Case remanded to the PCRA court for disposition consistent with this decision.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2017